uh the next case we'll hear is number 24 33 46 sean mclaughlin et al versus cantor fitzgerald et al mr roach for appellants whenever you're ready may it please the court my name is kyle roach and i represent the appellants uh we respectfully ask for three minutes in rebuttal cantor fitzgerald and pgc asked this to do two things that no circuit court has ever done first they ask you to hold that a plaintiff loses standing under the sherman act if they choose to bear the cost of an otherwise anti-competitive scheme and compete in the relevant markets second they ask this court to extend the copperwell doctrine to non-competing forfeiture agreements offending more than just a preliminary question how can former partners establish standing when they participated in labor market they alleged they were restrained from participating in yep i think the supreme court answered this question in perma life mufflers which said that um you cannot deny injury merely because they participated a plaintiff participated to the extent of use utilizing legal agreements carried out by others the fifth circuit in wegmans 1980 also that case was in the context of a partnership agreement and most recently the ninth circuit in epic games v apple that was in the context of party epic games challenging an anti-competitive scheme you don't allege that the agreements involving your one two to six clients here uh affected the market in some way do you you're talking about harms to your six particular clients no that is that is not correct okay so what's the evidence or reason to believe that six individual anti-competitive sorry non-compete agreements affect the market as a whole so we lay that out and join it that second amendment complaint ja329 to 354 and it's not just these six plaintiffs here this is this case was brought as a class and um just taking a step back i want to answer that by providing the scope of the agreements and how they're impacted the term um each of the partnership agreements at issue define the term competitive activity so broadly that it would apply to a former financier in new york who left the firm to practice residential real estate in idaho mr lutnick in his capacity of managing partner of both firms has the sole and absolute discretion to decide what types of activity constitute forfeiture and which activities do not court of chancery recognized that these provisions are so broad that former partners trip them in winning and to answer the question like this is a common kind of state law argument about appropriate scope of non-competes but in terms of a federal antitrust violation like what i do not recall seeing cases of individual employees or even classes of employees challenging antitrust as as antitrust violations what how is that enough of a plausible allegation harm to the market as a whole i think there's um the answer to that is because it was exercised more these the provisions at issue in this case were exercised more than 40 percent of the time a departing partner left the firm it's not just these six plaintiffs and we will show in discovery that these provisions at issue did have market-wide impact in both the middle of the middle market investment bank labor market and in the interdeal broker labor market which is comprised of just three firms and so the anti-competitive effects here are on a market-wide basis the employees all of whom are subject to these provisions while they're at the forum both non-competing the forfeiture that has a chilling effect on the market's ability to access talent especially where these markets are these these specialized financial markets are as small as they are some of the cases that you've pointed us to actually show us that okay a person couldn't get a job in a particular market or they a particular third party had to pay more for people because of these agreements i don't see that in the complaint did i miss it are there allegations like that here yes the uh i'm mr mclaughlin who's the lead plaintiff in this case sat out of the labor market for you because there's two provisions going on at issue there's the restrictive covenants and there's the forfeiture provisions the restrictive covenants operate for a one and two year period post-employment nearly unlimited in scope it's do you directly and compete or did you indirectly complete um and then there's the four-year forfeiture that operates for two additional years so to answer your question yes these did prevent the labor markets from um from accessing talent for certainly that first year for certain types of activities for an additional two-year period and then the forfeiture uh remains for an additional four-year period would the effect of ruling in your favor mean that anytime you have a a large company that has non-competes over let's say a year mean that there's an antitrust claim no and i think the reason that chairman act challenge uh chairman act challenges to non-competes are uncommon is because it's typically difficult to i think both of your points to show market-wide impact in the constant context of a singular enforcement of a non-compete that's not what we have here what we have here is exercising the forfeiture more than 40 percent of the time that a departing partner leaves the firm so that's we're outside the land of you know i think cases like newberger from the second circuit where it was in the context to your point of a singular enforcement of a non-compete i think so then to my answer is yes if the companies enforce them if the companies enforce them i to to attune that yes where a plaintiff can allege that there is a market-wide impact i think that to to show a market wide to be able to prove um allege in a complaint a rule of reason violation they would also have to show that the provisions were facially overbroad i think we've clearly done that the court of chancery agreed in the related state case the the provisions were facially overbroad so i think yes if an employee was able to show market-wide enforcement of a non-compete in a manner that was facially overbroad they've alleged a a a violation of the most non-competes are not for years unlimited in geographic scope and not contained to a particular industry that's relevant that the the industry that the plaintiff worked in and i think you know to take a step back both the parties in the district court below are in violent agreement on one thing and that's that the uh antitrust laws were enacted to protect competition not but the district court's opinion which purports to uphold that standard does the exact opposite under the logic of the district court's opinion only former limited partners who sat out of the labor market altogether like mr mclaughlin did for a year would have standing under the sherman act to challenge the provisions uh former partners thus face a hobson choice either sit out of the relevant labor market and preserve your standing under the sherman act or go out and take new business start new businesses take employment elsewhere and forfeit compensation that you are invested compensation that you pay taxes on while you are at the firm in other words the district court's opinion discourages competition running afoul of the core purpose of the sherman act itself this logic has been rebuked by the supreme court twice in a footnote that follows the exact same passage that the district court and defendants here rely upon the supreme court in brunswick wrote quote an antitrust plaintiff need not prove an actual lessening of competition in order to recover because competitors may prove may be able to prove antitrust injury before they are actually driven from the market and competition is thereby lessened a couple five years later and mccready the supreme court left no doubt that standing under the sherman act does not require a plaintiff to yield to the coercive pressure of an otherwise anti-competitive scheme in order for the defendants excuse me in order for the plaintiff's injury to flow from that which makes the defendant's conduct unlawful within the definition of um within the scope of brunswick how do the post termination disbursements here uh flow from the non-compete provisions or from the non-compete provisions anti-competitive effects that you allege so the partners earn 20 of their income in 10 to 20 of their income during their course of time um that they're a limited partner at the firm in the form of these grant units some of the partners also buy in they put capital into the firm in the form of what the complaint calls hg2 units so there's two units going on grant units hg2 units one's a capital investment one is uh what your income is after they leave there's two provisions at issue the restrictive covenant which operates for one and two year period and the um the condition payment device section 11 11.03 in the counterfeit gerald agreement that provision causes you to requires the partnership to buy back your interest to buy back the interest that you pay taxes on over the course of a four-year period unless you engage in competitive activity and so that the four that's the the the restrictive to your question the restrictive covenant and the condition payment device they're similar in the types of activities that trigger them but they operate for different periods of time can i ask you about the delaware claim your clients agreed to these terms how can it be bad faith that counterfeits gerald is enforcing those terms uh the the implied covenant claim yes so the partnership agreements cannot be read simultaneously to give mr lutnick unlimited discretion to decide which types of conduct triggers those provisions and which types of conduct does not while at the same time allowing them to misrepresent whether or not certain conduct will trigger those provisions what did they misrepresent whether certain conduct would trigger the provisions that that's in the i think it's right before the class allegations in the second amendment complaint don't uh doesn't the um doesn't the agreement at issue require that any alterations uh amendments to the agreement have to be in writing yes so why would it matter what the oral representations were because there's you can't waive the implied covenant under delaware law the implied covenant of good faith and fair dealing that's what you're talking about yes and i think the delaware supreme court opinion in merrill is directly on point the only difference in the delaware supreme court's opinion in merrill is there the implied covenant was triggered when the employee was on the way in the door here the implied covenant is triggered when the limited partner is on the way out the door and in merrill the delaware supreme court held that quote an employer may not in good faith knowingly allow an employee to assume the duration of employment contract is indefinite at which an contract is when it is in secret contemplation of the employer limited duration wait so then you're saying that on its face this is a problem but i don't see how it could be facially overbroad you you're talking about the oral representation but now it's not the oral representations um so the state court has decided that these are valid they're not facially overbroad they're not facially problematic they have decided on for purposes of delaware state law which justice scalia said in the context of interpreting so i think that in the context of determining uh analyzing the question of the sherman act delaware state law is of no moment except in the context of the rule of you weigh it in the context of the rule of reason okay but it matters a lot for the for the delaware yes uh yes and the delaware supreme court did say in that opinion that claims brought um claims brought in bad faith um may still be cognizable under the partnership agreement and that's that's exactly inconsistent with with meryl meryl says the delaware court of chancery says i mean basically if the contract covers something explicitly you can't have an implied gap filler of good faith and fair dealing because the contract rules that is the implied covenant of good faith and fair dealing doesn't apply if there's no gap to feel and absolutely and that's absolutely right if they decide if they decided that this activity triggers the provision you're out then yes and that's what the delaware supreme court this issue wasn't before the delaware supreme court the issue of misrepresentation and so if the if the if the defendants here decided you know what we don't care if you're selling apples in it's triggering the provision it's within the scope of uh the the the the the the contract you're right delaware supreme court case in ainsley controls and that limited partners out out uh their claim but but that does not mean that the discretion under the limited partnership agreement for the managing partner to exercise his discretion does not read into it the implied covenant so you're saying that there's so what you're saying is nope i'm talking about something different i agree that the you acknowledge that uh uh that the limited partner has sole discretion the managing sorry the managing partner has sold absolutely but your position is that that particular discretion was exercised in bad faith that a exact that you can't get the covenant of bad faith come is triggered the covenant um implied covenant claim under nowhere is triggered where you're telling your limited partner i'm not going to exercise my discretion if you go and do this that limited partner then it goes and does that and the defendants trigger the forfeiture provision in any way that's a classic bait and switch that's impermissible under delaware let me ask you what isn't in this case there's no allegation that the partners were coerced into signing the post-employment restrictive agreements uh or that they couldn't leave the firm without signing them is there there is no allegation that okay very well um thank you and we'll get you back on the bubble good morning your honors may it please the court my name is david paul and i'm here on behalf of the defendant's appellees um this is not an antitrust case what you just heard from plaintiff's counsel is that his plaint his plaintiffs his clients have suffered individualized breach of contract injuries and not suffered antitrust injury what he said here pretty forcefully was that the labor markets are less competitive because uh of the company's decision to enforce these agreements at 40 enforcement right i think he said no no i am arguing that the market actually is affected by this he he did argue that and and i think that he he had an insufficient answer when your honors asked him how do these injuries translate to a wider market impact and that's because they actually have not pled any wider market impact at all in this case these are individualized damages that were forfeited because they successfully competed in the market that they now complain had suppressed competition when their own actions show that they were successful in competing sustained competition so that what happened the reason why we're scratching our heads a bit as to why this case is a sherman act claim is because it's the remnant of a breach of contract claim so this case was filed you heard counsel mentioned several time the chancery court ruling in the ainsley case this case was filed during a brief window in time when the chancery court had ruled that one of the limited partnership agreements was unenforceable under delaware law the same plaintiff's lawyer in the ainsley case then filed this class action on behalf of all and forfeited payments by the way there was some discussion about non-competes the only issue is the forfeiture for competition provision each plaintiff has pled that they have forfeited money as a result of their free choice to compete with the defendants but then the supreme court reversed that decision you heard a lot about the chancery court ruling but not very much about the supreme court ruling from last year where the supreme court ruled that these forfeiture for competition provisions are lawful under delaware law and in considering that that language in those agreements the court considered many of the same legal and policy issues at issue here including plaintiff's argument before the delaware supreme court that these forfeiture for competition provisions are anti-competitive and the delaware supreme court said as a matter of delaware law they are absolutely not anti-competitive your friends on the other side also say well there are supreme court cases mccready and i think you said broderick that he says say that the decision to compete despite a contract that otherwise would operate to prevent you from competing that isn't sufficient to say oh there wasn't an actual effect on competition how do you respond to that the the act of successful competition in and of itself is not definitive it is instructive because it reflects a market that is operating properly these plaintiffs successfully move to new employers that reflects an unimpaired market but in order to establish antitrust injury plaintiffs need to demonstrate that the market has been impaired number one and number two that the impairment to the market is directly affected effect directly affects the plaintiffs themselves and that's what the mcgready case talked about so mcgready which is distinguishable and does not save their case here the question in mcgready about needing to prove lesson lessening of competition or not was that mcgready was in a hobson's choice as the supreme court said the question was how does the market which had been harmed in that case through a collusion to drive the prices of one type of psychiatric services over another so the market is warped by the scheme the question then was how does the warping of the market affect the plaintiff individually and so the question was did she need to refrain from obtaining services from the psychologist which are the services that were not reimbursed which would reflect a reduced supply based on the artificially inflated prices in the market or could she push through could she retain the psychologist services forego the reimbursement which would reflect arguably sustained supply in the market despite the inflated prices and the court found in that instance that because the anti-competitive effects in the market were directly related to the damages that she suffered by sustaining the reimbursement losses that she suffered antitrust injury because again the damage to the market through the anti-competitive scheme made its way to her these plaintiffs are not downstream from any market-wide harm and so their losses are just a private business dispute they're not an antitrust case so for example in that case when you're thinking about the market one of the impacted sort of third-party place she was just an instrumentality of the damage to the market one of the one of the affected third-party members of the market in that case was for example the psychologist right yes and what's the third-party mark what's what's the what's the party that's affected here other than the plaintiffs well plaintiffs tell you they tell you in their allegations in the second amended complaint that potentially other competitors in the market were harmed by this so you asked earlier on whether the plaintiffs have alleged market harm if you at their allegations in the second amended complaint if you look at paragraphs 171 172 and 174 plaintiffs identify the following market harm in generic and academic terms they say foreclosing competitors ability to access talent that's foreclosing other employers access to talent and they they go on to say these non-compete clauses effectively force future employers to out workers from their non-competes if they want to hire them and that the whatever choice the firm makes its economic outcome outcomes are harmed that's directed at employers same thing with new business formation and innovation plaintiff plaintiffs argue that firms are more willing to enter markets where the sources of skilled laborers free from non-compete as opposed to other markets that's the impact of employers moving into new markets that's not any impact felt by these plaintiffs same with innovation innovation talks about non-competes affect the affect the mobility of workers which means that workers won't move between firms resulting in a decrease of knowledge flow between the firms that's an effect by the firm and then what's even better is that the plaintiffs then in the following paragraphs have their opportunity to connect these market harms for whatever they're worth with the actual plaintiffs and if you look at what they do we have the answer to this question and if that's in in paragraphs 182 and 184 and 185 and this is their opportunity to connect these so-called market harms to these plaintiffs what do they say 182 they talk about foreclosing competitors ability to access talent they say the the partnership's use of these restrictive devices forecloses its competitors from the ability to hire talented professionals it doesn't have anything to do with these plaintiffs and it operates to make it cost prohibitive to hire the company's employees by another employer same with 184 and 185 which is new business formation and innovation in 185 they focus on the capital that's necessary for a startup is which is better used for the risks associated with starting up a business and not paying to founders payments to founders that's payments to the employees so that's it that's their attempt to connect the so-called market harm to these plaintiffs they don't do it it's totally insufficient can i switch gears and ask you to address the implied covenant of good faith and fair dealing question is did the district court apply the wrong standard for the for each of that subjective good faith standard is is that really the law it is the law it i don't i don't think it's incorrect that the dv realty subjective standard was applied that's the standard that says that when a managing general partner in a delaware partnership has that discretion and the question is whether that discretion is exercised in bad faith the answer under dv realty and and the other related cases say as long as there's one good faith explanation for the actions then it is not bad faith so in other words how does it even apply here if the contract specifically deals with post-termination disbursements in other words how how do you even have in play the implied covenant of good faith and fair dealing if the contract explicitly deals with the situation well you don't as justice montgomery reeve said there's no gap to fill so the implied covenant does not affect but even if you apply the objective standard which is also good law under delaware objectively the company refraining from paying money that it's not obligated the objective standard is good law under delaware yes subjective standard is good law yes when do you when do you differentiate between the two then i think in this case the district court was correct implying the subjective standard when do you how do you differentiate between the two i think you're writing the opinion now i think in this case it does not matter because if you apply the objective standard there's no what what is the difference let's start and then tell me why it's harmless so in the subjective standard the question is whether the actor has at least one good faith reason for enforcing the contract in the objective standard the question is whether the actor objectively acted within the best interest of the company and the the act of not money that you're not required to pay because the conditions for payment were not met through the through the plaintiff's own free choice on a contract that's valid under delaware law is in the is in is objectively in the company's best interest so that's why they don't have a claim there and i think that your questions mirrored our our arguments on that um i'm happy to talk more about antitrust injury if you'd like to hear more but i really think that's the main issue in the case um but i think we've basically covered it all right thank you thank you mr paul mr roach we'll get you back on the phone uh i believe my friend on the other side just proved my point the key inquiry in a buyer side conspiracy is not the and judge ambrose your opinion in life watch is is on all fours here the key inquiry is not the entertainer's ever told me that before well i i think that life watch is on all fours in the context of the anti-competitive harm at issue here it is not the interchangeability of the products and services in a buyer side conspiracy rather the interchangeability of the buyers which in the context of a labor market are the employers themselves so mr paul is right when he says the second amendment complaint isn't talking about the anti-competitive harm as to mclaughlin as to the other plaintiffs it's the anti-competitive harm felt by the buyers in the market and the paragraphs one it starts earlier than that but let's focus on paragraphs 182 in where you do have a non-competent forfeiture yes of course the buyers in the market are foreclosed from access having access to talent um where you have a buyer side conspiracy newer business formation is harmed in the relevant buyer market because the when you leave canterfield if you want to start a firm a new firm with your colleagues you're restrained from doing so because under the the restrictive covenant you can't even start again any business with people your colleagues from canterfield within a two-year period within one year you can't go and do anything within four years if you do any of that stuff we're going to take 20 of your money and so the the buyer the the critical point on the anti-competitive harm is that this is a buyer side conspiracy and it is not relevant the the the the competitor the act does not protect the competitors it protects competition and so the the canterfield's competition and bgc's competition that's what that issue bgc bgc is sits in a market that's dominated by only three firms the middle market investment bank market is comprised of a narrow band of firms that do deals between 50 and 500 millions smaller than your typical your the jp world but larger than your uh your small regional banks um the last two quick points quickly um they say the only antitrust injury we allege here is the forfeiture that's not true we allege the decrease in the the the wages that they would have earned in the but for world that's paragraph 218 of the second amended complaint so on even under the district court's uh uh stamp um definition of mclaughlin would have standing because he did sit up for the labor market for a year um sophocleus would have standing he sat out of the labor market for a year mr miller same thing and so the idea that you the mclaughlin miller and sophocleus lost their antitrust standing the second they went uncompeted uh the fed circuit's opinion in trans web um which applied third circuit law is this rejects the exact reasoning that of the district court and the adoption of you have standing in option one you don't have standing in option two unless your honors have any further questions of compellent trust all right we thank both parties for their helpful briefing and argument we'll take the matter under